1  MESCH CLARK ROTHSCHILD
2  259 North Meyer Avenue
   Tucson, Arizona 85701
3  Phone:   (520) 624-8886
   Fax:     (520) 798-1037
4  Email: mmcgrath@mcrazlaw.com
5          irothschild@mcrazlaw.com
          ecfbk@mcrazlaw.com
6  By:    Michael McGrath, # 6019
7         Isaac D. Rothschild, # 25726
          85026-2/
8
9  Attorneys for Debtor

10              IN THE UNITED STATES BANKRUPTCY COURT

11                   FOR THE DISTRICT OF ARIZONA

12  | In re | Chapter 11 |
13  | | |
14  | SHURWEST, LLC, an Arizona limited liability corporation fka SHURWEST, INC., an Arizona corporation, | No. 2:21-bk-06723-DPC |
15  | | **MOTION TO APPROVE SETTLEMENT BETWEEN SHURWEST, MINNESOTA LIFE INSURANCE COMPANY AND THE QUANTUM GROUP, USA, LLC** |
16  | Debtor. | |
17
18

19        Pursuant to Fed. R. Bankr. P. 9019, Debtor, Shurwest, LLC ("Shurwest" or

20  "Debtor"), Minnesota Life Insurance, Co. ("Minnesota Life") and The Quantum Group,

21  USA, LLC ("Quantum") (Collectively, the "Settlors"), seek an order approving a settlement

22  between Shurwest, Minnesota Life and Quantum (the "Settlement") that will resolve

23  Shurwest's objection to the Minnesota Life claim, significantly improve the return to

24  general unsecured creditors, and provide an indemnity fund, for the benefit of Minnesota

25  Life to resolve litigation with certain claimants related to failed investments in a scheme

26  carried out by Future Income Payments, LLC ("FIP"). The Settlement is attached as Exhibit

A[1]. As part of the settlement, Debtor will waive its right to certain renewal commissions from Minnesota Life, some of which accrued pre-petition, and any accruing post-petition. The settlement was the product of a mediation that occurred on May 11, 2022 and subsequent negotiations between the Settlors. The Settlors request that this Court approve the following key terms of the agreement, many of which will also be incorporated into the Debtor's Plan of Reorganization:

- Minnesota Life will vote its claim of $16,342,411.81 (Proof of Claim $16,342,411.81) ("MNL Claim") in favor of the Debtor's Amended Plan of Reorganization;
- Minnesota Life will not receive a distribution on the MNL Claim post-effective date;
- Minnesota Life will withdraw its Motion to Dismiss or Convert;
- Quantum will fund an escrow for the benefit of Minnesota Life for certain pending lawsuits;
- Quantum will pay a settlement amount to Minnesota Life;
- Shurwest will waive any pre- and post-petition renewal commissions accrued by Minnesota Life on policies marketed by Shurwest;
- The Settlors will cooperate in litigating or trying to resolve pending lawsuits;
- The Settlors will cooperate as to a potential plan litigation injunction so disputes as to liability related to the pending claims may be resolved efficiently in a single forum; and

---

[1] The Escrow Agreement an Exhibit to the Settlement Agreement has been filed under Seal pursuant to the Court's Protective Order (DE 67) and will be made available to any party that acknowledges the Protective Order and the United States Trustee Office. The redactions in the Settlement Agreement and Escrow Agreement are confidential and redacted.

- The lawsuit styled *Minnesota Life Insurance Company v. Shurwest Holding Company, Inc. et al.,* U.S.D.C., D. Minn., Case No. 0:21-cv-1603-JNE-ECW ("Minnesota Action") will be dismissed with prejudice with all parties to receive mutual releases.

This Settlement is in the best interest of the Debtor and the Debtor's Estate and brings this case one important step closer to the consensual resolution of the Debtor's bankruptcy.

## I.    FACTUAL AND PROCEDURAL HISTORY

Shurwest, an independent general agency to sell Minnesota Life products pursuant to a Brokerage General Agency Contract ("Brokerage General Agency Contract") and Minnesota Life were and, in some cases, still are defendants in various litigation brought by victims of the FIP Ponzi scheme.

After the Brokerage General Agency Contract was terminated on or about June 8, 2020, on July 12, 2021, Minnesota Life filed the Minnesota Action, asserting claims for contractual indemnity, equitable indemnity and negligence against Shurwest and successor liability against Quantum, breach of contract against Shurwest, and declaratory relief against Ronald L. Shurts. Defendants to the Minnesota Action deny the allegations against them in the Minnesota Action.

On August 31, 2021, Shurwest filed a Voluntary Petition pursuant to Chapter 11, Subchapter V of Title 11 of the United States Bankruptcy Code.  That bankruptcy case is styled *In re Shurwest*, Case No. 21-06723, United States Bankruptcy Court for the District of Arizona (the "Bankruptcy Case").

On November 8, 2021, Minnesota Life timely filed amended Proof of Claim No. 123 in the amount of $16,342,411.81.

The MNL Claim is comprised of three components: (1) settlements paid by Minnesota Life to policy holders totaling $9,559,572.58; (2) commissions paid by

Case 2:21-bk-06723-DPC    Doc 438    Filed 07/13/22    Entered 07/13/22 15:05:20    Desc
LEGAL02/41858347v1
Main Document    Page 3 of 29

3

1   Minnesota Life on rescinded life insurance policies totaling $3,784,000.00

2   ("Commissions"); and (3) attorneys fees of $2,998,839.23 ("MNL Attorneys Fees").

3   Minnesota Life has accrued approximately $200,000 in commission payments that are

4   attributable to policies marketed through Shurwest.

5           On March 14, 2022, Minnesota Life filed its Motion to Dismiss or Convert Pursuant

6   to 11 U.S.C. § 1112(b) [Doc. 306] (the "Motion to Dismiss").

7           On April 19, 2022, Shurwest filed Debtor's *Objection to Claim 123 Filed by*

8   *Minnesota Life Insurance Company* [Doc. 358] (the "Claim Objection").

9           On May 11, 2022, the Parties and others mediated their disputes before attorney

10  Gerry Maltz ("Mediator"), and reached a settlement, which was further refined over the past

11  six weeks through additional, extensive negotiation and is memorialized as between the

12  Parties by this Motion.

13  **II.      THE SETTLEMENT IS IN THE BEST INTERESTS OF THE ESTATES**

14          Federal Rule 9019 of Bankruptcy Procedure allows "the court to grant approval if the

15  settlement is deemed fair and equitable." *In re Berkley Del. Court, LLC,* 834 F.3d 1036,

16  1039 (9th Cir. 2016). This Settlement is both fair and equitable and in the best interest of the

17  Estates under the Ninth Circuit factors for approving a compromise pursuant to Fed. R.

18  Bankr. P. 9019.  *A & C Properties*, 784 F.2d 1377, 1381 (9th Cir. 1986); *In re Pacific Gas*

19  *and Elec. Co.*, 304 B.R. 395, 417 (Bankr. N.D. Ca. 2004).  The factors include: (1) the

20  probability of success in litigation, (2) difficulties to be encountered in the matter of

21  collection, (3) the complexity of litigation, inconvenience and delay, and (4) the interest of

22  creditors and deference to their views.

23

24

25

26

## *A & C PROPERTIES FACTORS*

A.     *Merits*

This Settlement resolves issues related to the MNL Claim, the largest contract-based claim in the Debtor's bankruptcy estate. The Debtor's Claim Objection raised six disputed issues of law and fact related to the MNL Claim.

*Underlying Facts*

Shurwest asserts in April or May 2016, Schulze-Miller sought approval from Shurwest management to enter a relationship with FIP, through which Shurwest would (1) refer advisors to FIP, and (2) promote FIP's structured cash flow products to fund life insurance premiums for policies sold by the advisors. Shurwest unequivocally rejected this proposal. On May 3, 2016, without Shurwest's knowledge, Schulze-Miller formed an Arizona company, MJSM Financial, LLC ("MJSM"), so that she could become an FIP referrer without involving or notifying Shurwest. MJSM referred advisors to FIP and those advisors contracted directly with FIP. Minnesota Life disputes these facts.

Insurance agents then recommended to their clients to purchase life insurance policies from Minnesota Life and invest with FIP. The promised payments from FIP would then fund future premium payments on the purchased life insurance policies.

MJSM received a fee from FIP for FIP products sold by advisors whom MJSM had referred to FIP.  Shurwest contends it was not involved in and had no knowledge of these transactions, did not have a relationship with FIP, did not market FIP products and did not receive any compensation from FIP. Minnesota Life disputes these facts.

In April 2018, FIP collapsed. Later in 2018, Minnesota Life began settling claims made against it by some of its policyholders that had purchased FIP products in conjunction with their Minnesota Life policies. Through this process, Minnesota Life did not settle any claims against Shurwest, and individuals maintained claims against Shurwest even after they had settled with Minnesota Life.

_Commissions_

When Minnesota Life policy holders notified Minnesota Life that their respective policies were linked to FIP, Minnesota Life offered to refund their premiums and rescind the policies. As Minnesota Life had already paid commissions on refunded premiums to the clients' brokers, Minnesota Life has claimed that Shurwest is liable under its Brokerage General Agency Contract for the commissions paid by Minnesota Life to Shurwest affiliated brokers on policies that were rescinded. Both Minnesota Life and Shurwest agree that Shurwest has already repaid all commissions paid by Minnesota Life directly to Shurwest on rescinded policies.

Before the petition date, Minnesota Life had been applying commissions earned by Shurwest to the commission debt and Shurwest was also paying additional funds to Minnesota Life to pay off commission debt. In the two years before bankruptcy, Shurwest asserts it paid Minnesota Life $1,616,090.57 in addition to commissions that were accrued by Minnesota Life.

To prevail, Shurwest would have to succeed in showing that Minnesota Life violated the implied covenant of good faith and fair dealing (or some other claim as discussed below) when Minnesota Life returned premiums to clients on rescinded policies. It is likely that the Estate would be responsible for some or all of the Commissions.

_Settlement Payments_

The largest component of damages in the MNL Claim relates to settlement amounts Minnesota Life paid its customers in addition to the return of premiums. Minnesota Life contends Shurwest is liable for these claims based on contractual indemnity. As discussed in the Debtor's Objection, the merits of this claim turn on the language in Section 4.3 – Fidelity Bond and Indemnity Agreement – of the Brokerage General Agency Contract. That Section provides Shurwest is responsible for the acts of "individuals working for [Shurwest]."  While the Debtor steadfastly denies Schulze-Miller and other MJSM

1  employees acted on behalf of Shurwest in referring brokers to FIP they were Shurwest

2  employees at the same time they were working for MJSM. Further, unlike what Shurwest

3  contends they told the insurance brokers with whom these individuals worked, the MJSM's

4  agents did not inform Minnesota Life that they were working for MJSM (and not Shurwest).

5  However, even under this indemnity provision, Shurwest contends that Minnesota Life must

6  prove causation. Minnesota Life must show it was Shurwest's agents' actions that caused

7  the damage to Minnesota Life and not Minnesota Life's own actions that caused its

8  damages.

9      Minnesota Life would also assert that Section 4.5 of the Brokerage General Agency

10  Contract creates liability. This provision states that Shurwest is liable to Minnesota Life and

11  agrees to reimburse Minnesota Life for any defense and settlement of any claim. Shurwest

12  contends this argument is an expansion of the indemnity clause that is prohibited by public

13  policy under both Minnesota and Arizona law. Shurwest further argues that when Minnesota

14  Life resolved claims only against itself (and did not secure a release of Shurwest) Minnesota

15  Life did not adhere to the express terms of the contract and therefore Section 4.5 is

16  inapplicable.

17      Even if the contractual indemnity provision would not be enforceable, Minnesota

18  Life also asserts claims for equitable indemnity and various allegations of negligence

19  against Shurwest. These claims are possibly barred by the economic loss doctrine as there

20  was a contract. If they are not, they may still turn on the relative fault of Shurwest and

21  Minnesota Life, as discussed above. There are multiple open questions of fact and law as it

22  relates to Shurwest's liability for settlement payments made by Minnesota Life, but none of

23  these factual or legal issues are clearly in favor of either party, and all would be hotly

24  contested and costly to resolve through litigation. The Parties to the Settlement Agreement

25  desire to resolve their disputes to avoid the expense, burden and delay of continued

26  litigation and without admitting any fault or liability

Case 2:21-bk-06723-DPC    Doc 438    Filed 07/13/22    Entered 07/13/22 15:05:20    Desc
LEGAL02/41858347v1
Main Document    Page 7 of 29

7

1

*Attorneys Fees*

2   Minnesota Life also claims approximately $3 million in attorney's fees allegedly

3   incurred as a result of Shurwest's actions. While Shurwest has not been provided the detail

4   on the nearly $3,000,000 in attorneys fees, Shurwest's liability will rise or fall on the same

5   theories governing resolution of the claim to recover the settlement payments (such as

6   interpretation of Section 4.5 of the Brokerage General Agency Contract) as these fees were

7   allegedly incurred in reaching settlements with Minnesota Life policy holders or seeking to

8   collect those settlement amounts against Shurwest. Additionally, Shurwest contends that

9   Minnesota Life's recovery of attorneys' fees is questionable because Shurwest was making

10  payments to Minnesota Life to repay the commissions pre-petition and Shurwest was

11  attempting to work with Minnesota Life in good faith to resolve issues related to FIP.

12  Finally, Shurwest could challenge these attorney fees on the basis of causation – Shurwest

13  alleges that it simply did not cause Minnesota Life to incur $3,000,000 in attorney fees.

14  There are multiple open questions of fact and law as it relates to Shurwest's alleged liability

15  for Minnesota Life's attorney fees, but none of these legal issues are clear cut in favor of

16  either party, and these too would be hotly contested and costly to resolve through litigation.

17  The Parties to the Settlement Agreement desire to resolve their disputes to avoid the

18  expense, burden and delay of continued litigation and without admitting any fault or liability

19  *Released Claims*

20  Shurwest may have claims against Minnesota Life. Shurwest contends that that

21  Minnesota Life did not conduct appropriate due diligence regarding FIP or on policies

22  issued by Minnesota Life. As a result, Shurwest contends that Schulze-Miller's conduct was

23  not discovered or stopped as it related to FIP. Shurwest therefore asserts it may have claims

24  against Minnesota Life for some portion of the damages occasioned by the failure of

25  Shurwest's business. Shurwest anticipates that these claims will be subject to comparative

26

Case 2:21-bk-06723-DPC   Doc 438   Filed 07/13/22   Entered 07/13/22 15:05:20   Desc
LEGAL02/41858347v1
Main Document   Page 8 of 29

8

fault and other defenses. Shurwest believes will be a factually and legally intensive claim to prove, and will involve substantial litigation with an uncertain outcome.

The Estate will also release any preference or fraudulent transfer claims against Minnesota Life. A fraudulent transfer claim would require Shurwest to successfully prove that no claim against Minnesota Life exists against Shurwest, as all payments from Shurwest to Minnesota Life went to pay debts related to commissions paid on premiums refunded. The payments made in the three-month preference period were made consistently pursuant to the agreement of the parties made more than a year before the Petition Date on the repayment of commissions, and there would be a full ordinary course defense to any preference claim.

*Setoff and Recoupment*

The Settlement also requires the waiver of commissions due Shurwest totaling approximately $200,000 to date. Shurwest asserts these commissions become due and payable to Shurwest when premiums were paid on policies marketed by Shurwest and sold by Minnesota Life and when renewal premiums were paid. Minnesota Life views the Brokerage General Agency Contract and the issues that arose due to FIP as part of the same transaction, and therefore asserts it is able to setoff or recoup these payments against its sizeable alleged claim. Minnesota Life maintains that it should be able to setoff the commissions pursuant to 11 U.S.C. § 553(a) and, alternatively, exercise its right of recoupment. Recoupment is not a right to actual payment, but rather a defense to any potential claim made by the Debtor and prevents parties from obtaining benefits of a contract without the burdens. *Mercy Hosp. v. New York State Dep't of Social Servs.*, 171 B.R.490, 495 (Bankr. N.D.N.Y 1994). Shurwest asserts the commissions are due and payable to Shurwest despite the termination of the contract and that each sale of an insurance contract resulting from the marketing efforts is a unique transaction and therefore Estate property under 11 U.S.C. § 553.

The merits vary on the numerous factual and legal disputes between the Debtor and Minnesota Life, but in the settlement, the Estate is only surrendering potential commissions and releasing claims that have several legal and factual challenges. In exchange, Minnesota Life the largest asserted contract claim, will not receive any post-confirmation recovery from Shurwest. The parties' claims and defenses involve substantial, complex and uncertain litigation. For all of these reasons, this factor favors approval of the settlement.

### B. *Collection*

Due to Minnesota Life's substantial claim, its anticipated assertion of the defenses of setoff and recoupment, and the substantial administrative costs of defending against Minnesota Life's claim and proving Shurwest's potential claims, it is unlikely that Shurwest will recover funds for the Estate or for the benefit of creditors. This factor weighs in favor of approving the settlement.

### C. *Complexity and Cost of Litigation*

The claims between Shurwest and Minnesota Life have both unique and complex legal and factual issues that will require numerous depositions, experts, and dispositive motions to narrow the issues only so that a lengthy trial is anticipated. The complexity and cost of the litigation could far outweigh the value of any potential recovery to the Estate. This Settlement makes available substantial money for the payment of other creditors by eliminating Minnesota Life's pro rata share of plan distributions, along with releasing claims that will be incredibly costly to prove up. The Parties to the Settlement Agreement desire to resolve their disputes to avoid the expense, burden and delay of continued litigation and without admitting any fault or liability. This factor heavily favors approving the settlement.

### D. *Interests of Creditors*

The creditors' interests are served by this Settlement. Minnesota Life holds the largest contract claim against the Estate, and other than releasing the right to certain

contested commission payments and hotly contested litigation claims, the Estate is not giving up any other assets. Additionally, both Shurwest and Minnesota Life are formally committed to work together to reduce costs incurred by the Estate, for the benefit of creditors generally. Furthermore, the settlement provides a funding of the escrow as it relates to certain parties with claims against both Minnesota Life and the Estate, without using Estate assets. Minnesota Life is in favor of a resolution of its claim through this mechanism. The creditors's interest factor is paramount, and Courts are instructed to give "proper deference to the [creditors'] reasonable views." *In re A &C Props.*, 784 F.2d 1377, 1381 (9th Cir. 1986). Unsecured creditors do substantially better with this Settlement then without it, and Minnesota Life is effectively agreeing to take nothing under the Plan. This factor strongly favors approving the Settlement.

## IV. THE SETTLEMENT IS IN THE BEST INTEREST OF THE ESTATE AND IS FAIR AND EQUITABLE

This Settlement resolves the largest contract-based creditor with limited use of Estate assets, avoiding substantial administrative costs and provides a greater return to unsecured creditors. Because there is no preferential payment to Minnesota Life, and only a release of contested claims, this settlement is fair and equitable as among all creditors. Indeed, Minnesota Life is waiving its right to receive its pro rata share through this settlement.

## V. ORDER WITHOUT FURTHER NOTICE

Pursuant to Rules 2002 and 9019 of the Fed. R. Bankr. P. and the Judge's published Procedures, an order approving this compromise may be entered without further order of the Court if no party objects to the Settlement on or before August 8, 2022, which date is not less than 21 days from the notice of this Motion.

**ANY PARTY WISHING TO OBJECT TO THIS MOTION SHALL FILE SUCH OBJECTION AND THE REASONS FOR THE OBJECTION WITH THE COURT ON OR BEFORE AUGUST 8, 2022 AND MAIL THE OBJECTION TO COUNSEL FOR:**

LEGAL02/41858347v1

**SHURWEST, LLC: COUNSEL FOR THE DEBTOR AT THE ADDRESS SET FORTH ABOVE;
AND
MINNESOTA LIFE: LEIB LERNER, 333 SOUTH HOPE STREET, SIXTEENTH FLOOR, LOS ANGELES, CALIFORNIA 90071.**

**IF ANY OBJECTIONS ARE RECEIVED, COUNSEL FOR THE DEBTOR SHALL SET THE MOTION FOR HEARING BEFORE THE COURT.**

## VI. RELIEF REQUESTED

The Debtor respectfully requests an order from the Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, approving this Settlement between the Debtor, Minnesota Life and Quantum.

DATED: July 13, 2022                    MESCH CLARK ROTHSCHILD

By:___/s/Isaac D. Rothschild, #25726___
                                                         Michael McGrath
                                                         Isaac D. Rothschild
                                                         Attorneys for Debtor

Notice of Electronic Filing ("NEF")
electronically served on the date of
filing upon the registered CM/ECF
Users herein as evidenced by the NEF.

Case 2:21-bk-06723-DPC    Doc 438    Filed 07/13/22    Entered 07/13/22 15:05:20    Desc
LEGAL02/41858347v1                    Main Document         Page 12 of 29

12

# Exhibit A

DocuSign Envelope ID: 8D87BA7D-E58D-41E0-9EF8-17F00C73F1AC

## SHURWEST, QUANTUM AND MINNESOTA LIFE SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is made and entered into as of July 8, 2022, by Shurwest, LLC ("Shurwest"), The Quantum Group, USA, LLC ("Quantum"), and Minnesota Life Insurance Company ("Minnesota Life"). Each of Shurwest, Quantum and Minnesota Life may be referred to as a "Party" and collectively as the "Parties." This Agreement is made with reference to the following facts:

## RECITALS

A.    On October 9, 2012, Shurwest was appointed as an independent general agency to sell Minnesota Life products pursuant to a Brokerage General Agency Contract ("Brokerage General Agency Contract").

B.    The Brokerage General Agency Contract was terminated on or about June 8, 2020.

C.    On July 12, 2021, Minnesota Life filed its complaint for contractual indemnity, equitable indemnity and negligence against Shurwest and Quantum, breach of contract against Shurwest, and declaratory relief against Ronald L. Shurts, in that case styled *Minnesota Life Insurance Company v. Shurwest Holding Company, Inc. et al.*, U.S.D.C., D. Minn., Case No. 0:21-cv-1603-JNE-ECW ("Minnesota Action"). Defendants to the Minnesota Action deny the allegations against them in the Minnesota Action.

D.    On August 31, 2021 Shurwest filed a Voluntary Petition pursuant to Chapter 11, Subchapter V of Title 11 of the United States Bankruptcy Code. That bankruptcy case is styled *In re Shurwest*, Case No. 21-06723, United States Bankruptcy Court for the District of Arizona (the "Bankruptcy Case").

E.    Minnesota Life is a defendant in certain lawsuits ("Pending Lawsuits"), in which Shurwest and/or Quantum are co-defendants, or, in certain instances, Shurwest has been dismissed as a defendant in certain lawsuits without prejudice, with the respective claims against Shurwest being pursued solely against Shurwest in the Bankruptcy Case. The Pending Lawsuits are:

1)    *Kolette A. Page and Cletus M. Page v. Minnesota Life Insurance Company, et al.*, Case No. 8:18-cv-01208 (C.D. Cal.) (Plaintiffs' Counsel: Brandon S. Reif, Reif Law Group and Jon C. Furgison, Furgison Law Group PC);

1

DocuSign Envelope ID: 8D87BA7D-E58D-41E0-9EF8-17F00C73F1AC

2) *Emma Angelica McKinnon v. Minnesota Life Insurance Company, et al.,* Case No. 19STCV21598 (Superior Court of the State of California, Los Angeles County) (Plaintiff's Counsel: Brandon S. Reif, Reif Law Group and Jon C. Furgison, Furgison Law Group PC);

3) *Gloria Salvador Rodillas v. Minnesota Life Insurance Company, et al.,* Case No. 19STCV21497 (Superior Court of the State of California, Los Angeles County) (Plaintiff's Counsel: Brandon S. Reif, Reif Law Group and Jon C. Furgison, Furgison Law Group PC);

4) *Andrea Jantzer v. Minnesota Life Insurance Company, et al.,* Case No. 604938/2020 (Supreme Court of the State of New York, Suffolk County) (Plaintiff's Counsel: Brandon S. Reif, Reif Law Group and Jon C. Furgison, Furgison Law Group PC);

5) *Eleanor and Rocco Ciofoletti and Larry Stospal v. Securian Financial Group, et al.,* Case No. 18-cv-03025-JNE-ECW (District Court for the District of Minnesota) (Plaintiffs' Counsel: Lee Squitieri, Squitieri & Fearon, LLP and Dan Gustafson, Gustafson Gluek PLLC).

6) *Eleanor and Rocco Ciofoletti, and Larry Stospal v. The Quantum Group USA, LLC, Shurwest, LLC, Securian Financial Group, Inc., Minnesota Life Insurance Company, and Securian Life Insurance Company,* Adversary Case No. 2:22-ap-00084 (Bankruptcy Court for the District of Arizona, Main Case In re Shurwest, LLC, Case No. 2:21-06723) (Plaintiffs' Counsel: Lee Squitieri, Squitieri & Fearon LLP, Hart Robinovotich, Zimmerman Reed LLP, Kenneth A. Wexler, Wexler Boley & Elgersma LLP, and Dan Gustafson, Gustafson Gluek PPLC).

F. On November 5, 2021, Shurwest filed Debtor's Plan of Reorganization (Subchapter V) November 2021 [Doc. 121] (the "Plan").

G. On November 8, 2021, Minnesota Life timely filed amended Proof of Claim No. 123 in the amount of $16,342,411.81 ("Proof of Claim").

H. On March 14, 2022, Minnesota Life filed its Motion to Dismiss or Convert Pursuant to 11 U.S.C. § 1112(b) [Doc. 306] (the "Motion to Dismiss").

I. On April 19, 2022, Shurwest filed Debtor's Objection to Claim 123 Filed by Minnesota Life Insurance Company [Doc. 358] (the "Claim Objection").

J. At various times during the Bankruptcy Case, some or all of the Parties have stipulated, and the Bankruptcy Court has ordered, that the response, reply or hearing dates on the Plan, Motion to Dismiss and Claim

DocuSign Envelope ID: 8D87BA7D-E58D-41E0-9EF8-17F00C73F1AC

Objection should be continued, for the convenience of the Bankruptcy Court and the Parties.

K. On May 11, 2022, the Parties and others mediated their disputes before attorney Gerry Maltz ("Mediator"), and reached a settlement, which is memorialized as between the Parties by this Agreement. Subject to Bankruptcy Court approval pursuant to FRBP 9019 with regard to the rights, benefits and obligations of Shurwest, the Parties have agreed to settle all of the disputes between them upon the terms and subject to the conditions set forth in this Agreement. The Parties desire to resolve their disputes to avoid the expense, burden and delay of continued litigation and without admitting any fault or liability.

NOW THEREFORE, in consideration of the foregoing facts and the mutual covenants, conditions, promises and agreements contained herein, and for other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the Parties agree as follows:

## AGREEMENT

1. **Incorporation of Recitals.** The foregoing Recitals are true and correct, and are incorporated and made part of this Agreement as though set forth in full in this Paragraph.

2. **Terms of Settlement.**

2.1 **Conditions Precedent.** Conditions precedent to the effectiveness of this Agreement ("Conditions Precedent") are:

    a. On or before July 12, 2022, Shurwest files a motion with the Bankruptcy Court, in a form reasonably acceptable to Minnesota Life, seeking approval of this Agreement ("9019 Motion").

    b. Quantum funds the Escrow and pays the Settlement Amount referenced below.

    c. An order is entered ("9019 Order") approving the 9019 Motion and no stay is in effect.

This Agreement shall become null and void and of no force or effect if these Conditions Precedent do not occur, and the Parties shall be deemed to be in the same position as they were in prior to any mediation and/or settlement between and among them, as if this Agreement did not occur.

2.2 **Allowed Claim.** For Minnesota Life's acceptance of a Plan consistent with this Agreement, including Paragraphs 2.3, 2.4, 2.5, 2.6, 2.7, 2.8, 2.9 and 2.10 herein, Shurwest agrees that the Proof of Claim shall be allowed.

3

**2.3    No Distribution on Allowed Claim.**  The Parties agree that there shall be no distribution on the allowed Proof of Claim if, and only if, the Settlement Payment in paragraph 2.4 is paid and the Escrow in paragraph 2.6 is funded.

**2.4    Settlement Amount.**  Quantum shall pay to Minnesota Life the sum of $█████████ ("Settlement Amount"), in good funds, on or before the Plan Effective Date (defined below).  As set forth in Paragraph 5.13, the Settlement Amount shall be confidential.

**2.5    Plan Modification.**  On or before July 15, 2022, the Debtor shall file a modification of the Plan or an amended Plan (either being a "Modification"), in a form reasonably acceptable to Minnesota Life, which incorporates the material terms of this Agreement.  Debtor shall provide a reasonably complete proposed draft Plan modification to Minnesota Life by no later than June 30, 3022 for its review.

**2.6    Escrow.**  Quantum and Minnesota Life shall set up a payment escrow (the "Escrow"), to be funded by Quantum on or before the Effective Date in accordance with the terms and conditions of this Agreement, by depositing $████████ in good funds into the Escrow, for the sole and exclusive benefit of Minnesota Life, to reimburse Minnesota Life for any fees, costs, settlement payments, judgments, or any appeals therefrom, arising out of or related to the Pending Lawsuits and the Bankruptcy Case after the execution of this Agreement.  The Shurwest/Quantum Releasing Parties (defined below) shall have no liability to Minnesota Life relating to or arising out of the Pending Lawsuits beyond the amount of the Escrow less any return of Escrowed Funds as set forth in the Payment Escrow Agreement ("Escrow Agreement"), a copy of which is attached hereto as **Exhibit A.**  All requests for reimbursement shall be submitted and resolved out of the Escrow in accordance with the terms and conditions of the Escrow Agreement.  The Parties understand and agree that the Plan and/or Modification shall acknowledge and provide that the Escrow is not property of Shurwest or of Shurwest's bankruptcy estate, and that neither Shurwest nor its bankruptcy estate has any interest in the Escrow.  As set forth in Paragraph 5.13, the Escrow amount shall be confidential.

**2.7    Waiver of Renewals.**  As of the Effective Date, Shurwest waives all right, title and interest in and to any renewal fees or associated commissions that Minnesota Life may be currently holding or may in the future receive for insurance policies sold by or through Shurwest and/or for which Shurwest may have some entitlement to payment (the "Renewal Monies").  For avoidance of doubt, the 9019 Motion shall include a request for a finding, and the 9019 Order shall provide, that to the extent applicable, any stay under 11 U.S.C. § 362(a) is lifted as of the Effective Date so as to permit Minnesota Life to set off, distribute to itself and/or transfer into its operational accounts any and all Renewal Monies.

4

DocuSign Envelope ID: 8D87BA7D-E58D-41E0-9EF8-17F00C73F1AC

**2.8    Cooperation on Modification Generally.**  The Parties shall cooperate so that the Modification incorporates the material terms of this Agreement, and specifically incorporates paragraphs 2.9 and 2.10, and takes such terms into account.  Any disagreement about the Modification shall be brought to the Mediator, who has the sole, exclusive and non-appealable authority, on a summary basis, to determine the appropriate modification that the Parties should jointly propose within the spirit of the Parties' Agreement. Subject to the above, the Parties acknowledge that the Debtor retains the right to modify its Plan in its discretion including, but not limited to, resolving alleged fraudulent transfer claims including any that seek to create any alter-ego liability for Quantum or have such litigation centralized in the Bankruptcy Court for the District of Arizona.

**2.9    Cooperation on Channeling Injunction:** The Parties shall cooperate so that the Modification provides for a channeling injunction for the Pending Lawsuits to be transferred in their entirety, by and against all parties named in each of the Pending Lawsuits, to the Bankruptcy Court and/or, to the United States District Court for the District of Arizona, and for the Pending Lawsuits to then be litigated and determined together with any claims process against the Debtor.  For avoidance of doubt, the Parties understand and agree that they will act in good faith to obtain such channeling injunction provided, however, that if one is not obtained the Plan may be further modified ("Further Modification") to exclude such provision, and any such exclusion shall not be determined as a failure of this Agreement.  Any disagreement about the Further Modification of the Plan shall be brought to the Mediator, who has the sole, exclusive and non-appealable authority, on a summary basis, to determine the appropriate modification within the spirit of the Parties' Agreement.

**2.10    Coordination and Notice Regarding Pending Litigation.** The Parties shall reasonably coordinate in connection with the Pending Lawsuits.  This includes reasonably informing the other Parties of the status of the Pending Lawsuits, notice of settlement demands and offers, and, where reasonable, to communicate with each other regarding potential joint responses to settlement demands and presentation of joint settlement offers. Notwithstanding the foregoing or anything in this Agreement, each of Shurwest, Quantum and Minnesota Life retains the sole and exclusive right to litigate and resolve the Pending Lawsuits on its own behalf independent of any other Party.  For avoidance of doubt, nothing in this Agreement shall give Shurwest or Quantum the right to object to any terms of settlement reached by Minnesota Life on any of the Pending Lawsuits or Minnesota Life the right to object to any terms of settlement reached by Shurwest or Quantum on any of the Pending Lawsuits.

**2.11    Acceptance of Plan.**  After the Modification is filed and 9019 Order is entered by the Court, and subject to the Conditions Precedent, Minnesota Life will cast a ballot accepting the Plan, and will otherwise support confirmation of the Plan including any Further Modification,

5

DocuSign Envelope ID: 8D87BA7D-E58D-41E0-9EF8-17F00C73F1AC

provided that Minnesota Life's treatment in the Plan is as provided in this Agreement.

**2.12 Dismissal of the Minnesota Action in its entirety with prejudice.** After the Effective Date, Quantum, Shurwest, and Minnesota Life shall file a stipulation in the Minnesota Action, dismissing the Minnesota Action as to Minnesota Life, Shurwest, and Quantum with prejudice, with each party to bear its own attorneys' fees and costs. Substantially concurrent with the execution of this Agreement, the Parties agree to inform the District Court regarding their pending settlement, and to extend any applicable deadlines, and otherwise cooperate so as to eliminate the need for any party to take any action, make any filing, or otherwise incur any expense in connection with the Minnesota Action pending the Effective Date and the Plan Effective Date.

**2.13 Wire Information for Settlement Amount.** Payment of the Settlement Amount shall be wired to Minnesota Life as follows:

Bank Name: Wells Fargo Bank, San Francisco, CA
Account Name: Alston & Bird LLP California IOLTA Trust Account
Account #: 20000 4068 3595
WIRE ABA #:121 000 248
ACH ABA #122 287 170
Swift Code: WFBIUS6S
Reference: Minnesota Life/Quantum

**2.14 Wire Information for Escrow.** Funding of the Escrow shall be in accordance with the Escrow Instructions.

**2.15 Diligence in Obtaining Necessary Approvals.** The Parties agree that they will use their best efforts and diligence to promptly obtain approval of this Agreement, confirmation of the Plan and the occurrence of the Conditions Precedent to this Agreement. The Parties understand, however, that certain of these milestones may be governed by the courts presiding over the Bankruptcy Case and the Pending Litigation, and that the Parties may be unable to control the timing or precise nature of any approval given or order entered by those courts. The Parties agree that any deadline otherwise established by this Agreement can be extended by agreement of the Parties in writing, which shall not be unreasonably withheld. The Parties further agree that, so long as they are diligently pursuing approval of this Agreement and confirmation of the Plan, this section shall remain binding, notwithstanding the passage of time.

**3.** **Release Provision.**

**3.1** **Mutual Release:**

6

a.  Except for the rights and obligations of the Parties arising out of this Agreement, as of the Effective Date, Shurwest as well as its respective past and present directors, officers, managers, members, shareholders, spouses, subsidiaries, parents, affiliates, divisions, agents, employees, attorneys, insurers, representatives, assigns, successors (whether by merger, consolidation or operation of law) and predecessors in interest, including, but not limited to KT Equity Partners III, LLC, RLS Capital Holdings, LLLP, and Shurwest Holding Company, Inc. or any of their members, partners or shareholders, and Quantum, as well as its respective past and present directors, officers, managers, members, shareholders, spouses, subsidiaries, parents, affiliates, divisions, agents, employees, attorneys, insurers, representatives, assigns, successors (whether by merger, consolidation or operation of law) and predecessors in interest, including but not limited to Nexus Horizon, LLC, KT Equity Partners, III, LLC, Quantum Holding Company, Inc. and RLS Capital Holdings, LLLP, or any of their members, partners or shareholders (all together, the "Shurwest/Quantum Releasing Parties"), release, acquit, and forever discharge Minnesota Life as well as its respective past and present directors, officers, managers, members, shareholders, spouses, subsidiaries, parents (including but not limited to Securian Financial Group, Inc and its shareholders), affiliates (including but not limited to Securian Life Insurance Company and Minnesota Mutual Companies, Inc. and any of their shareholders), divisions, agents, employees, attorneys, insurers, representatives, assigns, successors (whether by merger, consolidation or operation of law) and predecessors in interest (the "Minnesota Life Released Parties"), from any and all past, present and future claims of every kind, type and description, known or unknown, direct or consequential, foreseen or unforeseen, which have been, could have been, or may be asserted by and between the Shurwest/Quantum Releasing Parties and the Minnesota Life Released Parties through the Effective Date, that arise out of or relate to the Brokerage General Agency Contract, the Minnesota Lawsuit, the Pending Lawsuits, the Bankruptcy Case, the Plan, and the Proof of Claim (the "Shurwest/Quantum Released Claims").

b.  Except for the rights and obligations of the Parties arising out of this Agreement, as of the Effective Date, Minnesota Life, as well as its respective past and present directors, officers, managers, members, shareholders, spouses, subsidiaries, parents (including but not limited to Securian Financial Group, Inc and its shareholders), affiliates (including but not limited to Securian Life Insurance Company and Minnesota Mutual Companies, Inc. and any of their shareholders), divisions, agents, employees, attorneys, insurers, representatives, assigns, successors (whether by merger, consolidation or operation of law) and predecessors in interest (the "Minnesota Life Releasing Parties") releases, acquits, and forever discharges Shurwest as well as its respective past and present directors, officers, managers, members, shareholders, spouses, subsidiaries, parents, affiliates, divisions, agents, employees, attorneys, insurers, representatives, assigns, successors (whether by merger, consolidation or operation of law) and

7

DocuSign Envelope ID: 8D87BA7D-E58D-41E0-9EF8-17F00C73F1AC

predecessors in interest, including, but not limited to KT Equity Partners III, LLC, RLS Capital Holdings, LLLP, and Shurwest Holding Company, Inc. or any of their members, partners or shareholders, and Quantum, as well as its respective past and present directors, officers, managers, members, shareholders, spouses, subsidiaries, parents, affiliates, divisions, agents, employees, attorneys, insurers, representatives, assigns, successors (whether by merger, consolidation or operation of law) and predecessors in interest, including but not limited to Nexus Horizon, LLC, KT Equity Partners, III, LLC, Quantum Holding Company, Inc. and RLS Capital Holdings, LLLP, or any of their members, partners or shareholders (the "Shurwest/Quantum Released Parties"), from any and all past, present and future claims of every kind, type and description, known or unknown, direct or consequential, foreseen or unforeseen, which have been, could have been, or may be asserted by and between the Minnesota Life Releasing Parties and the Shurwest/Quantum Released Parties through the Effective Date, that arise out of or relate to the Brokerage General Agency Contract, the Minnesota Lawsuit, the Pending Lawsuits, the Bankruptcy Case, the Plan, and the Proof of Claim (the "Minnesota Life Released Claims" and together with the Shurwest/Quantum Released Claims, the "Released Claims").

        c.    It is further understood and agreed by the Shurwest/Quantum Releasing Parties and the Minnesota Life Releasing Parties that all rights under Section 1542 of the California Civil Code and any similar law of any state or territory of the United States are hereby expressly waived as to the Released Claims. Said section reads as follows:

        "1542. GENERAL RELEASE – CLAIMS EXTINGUISHED. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

**4.**     <u>**Warranties and Representations.**</u>

        4.1    <u>Authority to Execute Agreement</u>. Each of the Parties, including the Shurwest/ Quantum Releasing Parties and Minnesota Life Releasing Parties, warrant and represent that the individual persons executing this Agreement are duly authorized to execute this Agreement on behalf of the respective Party, as well as the Shurwest/ Quantum Releasing Parties and Minnesota Life Releasing Parties, and in their respective capacities as indicated below, provided however that the rights, benefits and obligations of Shurwest only are specifically subject to the approval of the Bankruptcy Court as provided for herein.

        4.2    <u>Legal Representation</u>. Each of the Parties represent and agree, for themselves and no other Party, that: (a) the Party has obtained

8

and/or had the opportunity to obtain independent legal advice with respect to this Agreement, the subject matter of this Agreement, the facts referred to above, and any rights or asserted rights arising therefrom; (b) the Party has full knowledge of any and all rights which it/he/she may have in connection with the Released Claims, the subject matter of the Released Claims, and the facts relating to the Released Claims; (c) no Party is relying upon and has not relied upon any representation or statement made by any of the other Parties or their counsel, with regard to the matters herein compromised or with regard to any rights or asserted rights in connection therewith; and (d) each Party hereby assumes the risk of any mistakes of fact in connection with the true facts involved in this Agreement or with regard to any facts which are now unknown to it relating thereto.

4.3    **Assignment.**    Each of the Parties hereby warrants, represents and agrees that they are the sole and lawful owner of all right, title and interest in and to all of their respective Released Claims which are referred to in the releases set forth above and that they have not heretofore voluntarily, by operation of law or otherwise, assigned or transferred or purported to assign or transfer to any person whomsoever any such Released Claims, or any part or portion thereof.

5.    **Miscellaneous Provisions.**

5.1    **Further Assurance.**    In addition to the documents and instruments to be delivered as herein provided, each of the Parties hereto shall, from time to time, at the request of the other Party, execute and deliver to the other Party such information and/or documents; and/or shall take such other action as may be reasonably required to carry out the terms of this Agreement and the Plan. The Parties hereto agree to do, execute, acknowledge and deliver (or cause to be done, executed, acknowledged and delivered) each and every such further act, covenant, assurance, instrument or document, and take any other actions, as may be reasonably necessary to further the purposes of or to carry out the intent and purpose of this Agreement and the Plan.

5.2    **Professional Fees.**    The Parties shall each bear their own attorney's fees and costs with respect to this Agreement and any and all documents and instruments to be delivered and/or filed as herein provided. With respect to any suit or proceeding involving the enforcement of this Agreement, including, but not limited to, instituting any action or proceeding to enforce any provisions of this Agreement, to prevent a breach of this Agreement, for damages by reason of any alleged breach of any provisions of this Agreement, or for a declaration of a Party's rights or obligations under this Agreement, the ultimate prevailing Party shall be entitled to recover from the losing Party or Parties, in addition to such other relief as may be granted, its reasonable attorneys' fees and costs. For avoidance of

9

DocuSign Envelope ID: 8D87BA7D-E58D-41E0-9EF8-17F00C73F1AC

doubt, to the extent Minnesota Life seeks reimbursement of the fees and costs addressed in this Paragraph, such reimbursement shall not come from, be independent of, and have no bearing on, the Escrow and the benefits to which Minnesota Life is entitled to received pursuant to the Escrow.

5.3     Breach of the Agreement. It is expressly understood and agreed by each of the Parties that nothing provided for in this Agreement is intended to nor does it release any claims arising out of breach of this Agreement, or any representations contained herein or made in connection herewith. All representations, warranties and covenants herein shall survive the execution of this Agreement.

5.4     Governing Law. This Agreement and the rights and obligations of the Parties hereunder shall be construed, interpreted, and enforced in accordance with the laws of the State of Arizona. In the event of any dispute over enforcement of the terms of the Agreement, the United States Bankruptcy Court for the District of Arizona, Phoenix Division shall be the exclusive forum to resolve such dispute, except for those specific matters that shall be decided by the Mediator as explicitly set forth in this Agreement. For avoidance of doubt, the rights and obligations of any underlying agreements between the Parties shall be determined in accordance with the choice of law provision of the particular agreement at issue.

5.5     Counterparts. This Agreement may be executed in multiple counterpart copies, each of which shall be deemed an original, but all of which together shall constitute one agreement. An electronically transmitted signature shall be deemed an original for all purposes.

5.6     Severability. In the event that any covenant, condition or other provision contained in this Agreement is held to be invalid, void or illegal by any court of competent jurisdiction, the same shall be deemed severable from the remainder of this Agreement and shall in no way affect, impair or invalidate any other covenant, condition or other provision contained herein, so long as such severance does not materially affect the consideration given or received herein or the general intent hereof. If such condition, covenant or other provision shall be deemed invalid due to its scope or breadth, such covenant, condition or other provision shall be deemed valid to the extent that the scope or breadth is permitted by law.

5.7     Waiver. No breach of any provision herein can be waived unless in writing. Waiver of any one breach of any provision hereof shall not be deemed to be waiver of any other breach of the same or the other provision hereof.

DocuSign Envelope ID: 8D87BA7D-E58D-41E0-9EF8-17F00C73F1AC

5.8 <u>Integration.</u>    This Agreement sets forth the entire agreement between the Parties with regard to the subject matter hereof and no change, modification, amendment, termination or discharge of this Agreement shall be binding unless made in writing and executed by each of the Parties. All agreements, covenants, representations and warranties, express or implied, oral and written, of the Parties with regard to the subject matter hereof, are contained in this Agreement and the documents referred to herein or implementing the provisions hereof. No other agreements, covenants, representations or warranties, express or implied, oral or written, have been made by any Party to another Party with respect to the subject matter of this Agreement. All prior and contemporaneous conversations, negotiations, possible and alleged agreements and representations, covenants and warranties with respect to the subject matter hereof are waived, merged herein, and superseded hereby and thereby. This is an integrated agreement.

5.9 <u>Notices.</u>    All notices, consents, waivers, and other communications required or permitted by this Agreement shall be in writing and will be deemed given to a Party when sent by email to the following email addresses ("Notice"). In addition, a hard copy of each Notice shall be sent by United States mail in each case to the following address and marked to the attention of the Person (by name or title) designated below, but the failure to mail such Notice shall not affect the timing or validity of a Notice that has been properly emailed. Each Party may change the email and postal address of that Party by Notice to each other Party pursuant to this Section. Notice shall be sent to:

**If to Shurwest:**

Michael McGrath
Isaac D. Rothschild
**Mesch Clark Rothschild**
259 N. Meyer Avenue
Tucson, AZ 85701-1090
Phone: 520.624.8886
Email: mmcgrath@mcrazlaw.com
Email: irothschild@mcrazlaw.com

**If to Quantum:**

Daniel G. Dowd
J. Neil Stuart
**Cohen Dowd Quigley P.C.**
The Camelback Esplanade One
2425 East Camelback Road, Suite 1100
Phone: 602.252.8140
Email: ddowd@CDQLaw.com
Email: nstuart@CDQLaw.com

**If to Minnesota Life:**

Bo Phillips
Leib M. Lerner
Gillian Clow
**ALSTON & BIRD LLP**
333 S. Hope Street, 16th Floor
Los Angeles, CA 90071
Phone: (213) 576-1000
Email: Bo.Phillips@alston.com
Email: leib.lerner@alston.com
Email: gillian.clow@alston.com

     5.10  <u>Effective Date</u>. The "Effective Date" of this Agreement shall be the date that (i) this Agreement is executed by and the executed Agreement is delivered to all Parties and (ii) all Conditions Precedent to this Agreement are fulfilled. As to any provision in this Agreement that is tied to the Plan Effective Date, the "Plan Effective Date" shall be the date that the Bankruptcy Court enters an order confirming the Plan, without any material change in the treatment of Minnesota Life as required by this Agreement, and such order becomes final and appealable, whether or not any appeal is pending, and no court has entered any order staying the effective date of the Plan and no such motion for stay is pending. For avoidance of doubt, notwithstanding anything to the contrary in this Agreement, the Mutual

12

Release in section 3.1 hereof shall not be effective until Quantum funds the Escrow and pays the Settlement Amount.

**5.11   No Admission of Liability or Wrongdoing.**  The Parties agree and acknowledge that this Agreement, and the settlement it represents, do not constitute or evidence an admission or inference of liability, fault, or wrongdoing on the part of any Party.  The Parties do not admit any liability or wrongdoing whatsoever.

**5.12   Binding on Successors.**  This Agreement shall be binding upon and inure to the benefit of the Parties and to their respective successors and assigns.

**5.13   Confidentiality of Settlement Amount and Amount Deposited into Escrow.**  The Parties and their undersigned counsel expressly acknowledge and agree that the Settlement Amount and the amount deposited into Escrow (the "Confidential Amounts") shall be held strictly confidential to the extent permitted by law, or as ordered by a court of competent jurisdiction.  The Confidential Amounts shall not be disclosed, directly or indirectly, orally or in writing, to any person or entity whatsoever except as may be required for accomplishment of the purposes of this Agreement, or for financial accounting, audit or financial statement purposes, or the preparation of state and federal income tax returns and as otherwise required by legal compulsion.  If any Party or counsel is served with such subpoena or court order, they shall immediately notify and provide counsel for all other Parties with a copy of same and shall provide reasonable notice to contest such subpoena or court order.  The undersigned Parties do hereby agree to keep the Confidential Amounts confidential and shall not disclose them to anyone other than the Party's tax professionals, financial advisers, auditors, bankers, attorneys and as may be required by law.

[Remainder of page intentionally blank]

13

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date set forth above.

**SHURWEST, LLC**

By:_____

Name and Title:

**MINNESOTA LIFE INSURANCE COMPANY**

By:_____

Name and Title:

**THE QUANTUM GROUP, USA, LLC**

By:_____

Name and Title: Ronald L. Shurts
Authorized Agent

**APPROVED AS TO FORM:**
**MESCH CLARK ROTHSCHILD**

By:_____
    Isaac D. Rothschild
Attorneys for Shurwest

**COHEN DOWD QUIGLEY P.C.**

By:_____
    Daniel G. Dowd
Attorneys for Quantum

**ALSTON & BIRD LLP**

By:_____
    Leib M. Lerner
Attorneys for Minnesota Life

14

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date set forth above.

**SHURWEST, LLC**

By: _____

Name and Title:
James Maschek
President

**MINNESOTA LIFE INSURANCE COMPANY**

By: _Renee Montz_

Name and Title:

Renee Montz

SVP, General Counsel & Secretary

**THE QUANTUM GROUP, USA, LLC**

By: _____

Name and Title:

**APPROVED AS TO FORM:**
**MESCH CLARK ROTHSCHILD**

By: _____

Isaac D. Rothschild
Attorneys for Shurwest

**COHEN DOWD QUIGLEY P.C.**

By: _____

Daniel G. Dowd
Attorneys for Quantum

**ALSTON & BIRD LLP**

By: _____

Leib M. Lerner
Attorneys for Minnesota Life

14

# Exhibit A

**To Be Filed Under Seal**