ZIMMERMAN REED, LLP
Hart L. Robinovitch (SBN 020910)
14646 No. Kierland Boulevard, Suite 145
Scottsdale, Arizona 85254
Phone : (480) 348-6400
Fax : (480) 348-6415
Email : hart.robinovitch@zimmreed.com

Attorneys for Eleanor and Rocco Ciofoletti,
and Larry Stospal (the "Ciofoletti Creditors")

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| In re SHURWEST, LLC, an Arizona limited liability corporation fka SHURWEST, INC., an Arizona corporation,<br><br>Debtor. | Chapter 11<br><br>Case No. 2:21-bk-06723-DPC<br><br>***CIOFOLETTI* CREDITORS' OBJECTION TO THE SETTLEMENT AND MOTION TO APPROVE THE SETTLEMENT BETWEEN SHURWEST, MINNESOTA LIFE INSURANCE COMPANY AND THE QUANTUM GROUP, USA, LLC** |

Creditors Eleanor and Rocco Ciofoletti, and Larry Stospal (the "*Ciofoletti* Plaintiffs" or "*Ciofoletti* Creditors"), hereby Object to the Settlement Between Debtor Shurwest, Minnesota Life Insurance Company and the Quantum Group, USA, LLC (the "Settlement"), and oppose the Motion to Approve Settlement Between Shurwest, Minnesota Life Insurance Company and the Quantum Group, USA, LLC ("Motion") [Dkt. 438] as follows and incorporate by reference arguments made in their Combined Opposition to Motions to Dismiss filed on August 3, 2022, in *Ciofoletti, et al v. Shurwest et al.*, Adv. Case No. 2:22-ap-00084-DPC ("Adversary Proceeding"). *See* Adversary Proceeding Dkt. 30.

**INTRODUCTION**

Debtor Shurwest, LLC ("Shurwest" or "Debtor"), Minnesota Life Insurance Company ("Minnesota Life") and The Quantum Group, USA, LLC ("Quantum") (Collectively, the "Settlors"), seek an order approving a settlement reached in a secret negotiation between Shurwest, Minnesota Life and Quantum (the "Settlement"). Although the Settlors claim the Settlement will improve the return to general unsecured creditors by providing an indemnity fund for the benefit of Minnesota Life to resolve litigation with certain claimants related to failed investments in the scheme carried out by Future Income Payments, LLC ("FIP"), they have provided no evidentiary support of that proclamation – no valuation analysis; no financial analysis; nor even any analysis of the strength of the claims being relinquished by Shurwest as enumerated below.

The Settlement in actuality dilutes the bankruptcy estate, enables the Debtor's ongoing attempts to escape liability for its participation in the FIP-IUL scheme, unfairly benefits Minnesota Life over other creditors, allows Quantum to escaped unscathed with all of Shurwest's valuable assets even though no consideration was paid therefore and the transfer of assets to Quantum from Shurwest was the most important factor establishing Shurwest's insolvency at the time of the bankruptcy filing. The fact that Quantum and Shurwest share common ownership should demand a heightened level of scrutiny and clear and convincing

evidence of the relevant 9019 factors. Finally, the approval of the proposed settlement would violate the Due Process rights of absent class members who have never received notice of the bankruptcy.

### A. *Ciofoletti* Creditors Object to the Settlement.

Federal Rule 9019 of Bankruptcy Procedure allows "the court to grant approval if the settlement is deemed fair and equitable." *In re Berkley Del. Court, LLC,* 834 F.3d 1036, 1039 (9th Cir. 2016) but gives creditors the right to object – and the Court must consider creditors' "paramount interests" in determining the fairness of the settlement to, *inter alia*, creditors such as the Ciofolettis. *In re Masters Mates & Pilots Pension Plan & IRAP Litig.*, 957 F.2d 1020, 1026 (2d Cir. 1992) ("Where the rights of one who is not a party to a settlement are at stake, the fairness of the settlement to the settling parties is not enough to earn the judicial stamp of approval .... [I]f third parties complain to a judge that a decree will be inequitable because it will harm them unjustly, he cannot just brush their complaints aside.").

Here, it should be noted that the Settlors – Shurwest, Quantum and Minnesota Life -- collectively are moving for approval of this Settlement. The Trustee does not appear to have been consulted about or to have participated in the mediation surrounding the Settlement. The Settlors nowhere indicate that the Trustee was advised in advance of the Proposed Settlement or consulted about any potential impact the Settlement might have on the bankruptcy estate. But it is clear that the terms of this agreement serve to overwhelmingly benefit Quantum and Minnesota Life, with little benefit, if any, to the Shurwest bankruptcy estate. This Settlement appears designed as yet another ploy to shield Shurwest and Quantum from accountability for their involvement in the FIP Scheme, and to make it more difficult than it already is for creditors, victims of the FIP scheme, to pursue their claims against Minnesota Life - without those victims having any real say in the matter.

The Settlement's salient terms include:

1. Shurwest is releasing preference and fraudulent transfer claims against Minnesota Life for the $1.8 million Shurwest paid back to Minnesota Life in the two years before Shurwest filed for Bankruptcy;

2. Minnesota Life will vote its $16 million claim for the Shurwest Plan, which disadvantages the Ciofoloettis and other defrauded purchasers in the FIP -IUL scheme;

3. Minnesota Life will not get any "post effective" date distributions;

4. Minnesota Life will withdraw its motion to dismiss the Chapter 11 or convert to Chapter 7.

5. Quantum will fund an escrow for benefit of Minnesota Life for "certain" lawsuits;

6. Quantum will pay Minnesota Life some unspecified sums for some unspecified consideration; and

7. Shurwest will waive $ 200,000.00 in commissions it contends Minnesota Life owes it.

*See* Dkt. 438, Ex. A (Settlement) at §§ 2-3.

### B. Section 9019 Standards Cannot Be Satisfied Here Due to the Movants' Failure to Make Necessary Disclosures of Valuation of Claims Relinquished By Shurwest and the Strengths and Weaknesses of Minnesota Life's $16 Million Claim In Light of Minnesota Life's Participation In the FIP-Shurwest- Minnesota Life Scheme Claims.

This Settlement is neither fair nor equitable, nor in the best interest of the Estate under the Ninth Circuit factors for approving a compromise pursuant to Fed. R. Bankr. P. 9019. *A & C Properties*, 784 F.2d 1377, 1381 (9th Cir. 1986); *In re Pacific Gas and Elec. Co.*, 304 B.R. 395, 417 (Bankr. N.D. Ca. 2004). The factors include: (1) the probability of success in litigation, (2) difficulties to be encountered in the matter of collection, (3) the complexity of litigation, inconvenience and delay, and (4) the interest of creditors and deference to their views. The *Ciofoletti* Creditors object to the Settlement on several grounds.

### C. The Settlement Depletes the Bankruptcy Estate of Valuable Claims for No Monetary Consideration.

The proposed settlement requires Shurwest to give up valuable claims against both Quantum and Minnesota life without any quantifiable benefit or consideration in return.

The valuable claims Debtor is giving up are (a) any and all claims against Quantum, the entity to whom all of Shurwest's assets and business were transferred to evade Shurwest liabilities to creditors such as the Ciofolettis and the class they seek to represent; (b) Shurwest claims against Minnesota Life for $1.8 million in preferential claims and fraudulent transfers to Minnesota Life where quantum is very likely the alter ego of Shurwest; (c) a Shurwest claim for $200,000.00 in commissions from Minnesota Life; (d) claims for contribution from Minnesota Life as a joint-tortfeasor in the FIP-Shurwest-Minnesota Life scheme. The release of all these valuable Shurwest claims seriously undermines the position of the *Ciofoletti* Creditors without any consideration of their interests.

The Settlement depletes the Shurwest bankruptcy estate of funds fraudulently transferred to Quantum. The Settlement, therefore, unfairly gives preferential treatment to the claims of Minnesota Life over other creditors, and potentially impedes recovery by Ciofoletti Plaintiffs and the putative class alleged in the Adversary Class Action Complaint [Adversary Proceeding Dkt. 1]. As Ciofoletti Plaintiffs allege in their Adversary Class Action Complaint, the Quantum funds satisfying the Settlement were fraudulently transferred by Debtor/Shurwest to Quantum and/or that Quantum is the alter-ego successor in interest to Shurwest such that the transfers and/or payments by Quantum to Settle with Minnesota Life are, in actuality, funds that belonged (at least in part) to the Plaintiffs' and putative class members. In their Adversary Class Action Complaint, Plaintiffs allege in Counts VI and VII that Shurwest's fraudulent transfers to Quantum violated A.R.S. 44-1004 and that Plaintiffs and the Class are entitled to and seek: (a) avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim, attachment against the asset transfer to Quantum, and appointment of a receiver over Quantum. See Adversary Class Action Complaint at Count VI See ¶¶ 152-159.

Plaintiffs seek an order pursuant to U.S. Bankruptcy Code Section 105(a) and Section 510(c) to equitably subordinate the claims of Quantum and Minnesota Life Insurance to the claims of Plaintiffs and the Class on the grounds that both Minnesota Life and Quantum creditors engaged in wrongful conduct that has harmed the Debtor-Shurwest and is the cause of Debtor-Shurwest's insolvency and/or liability to pay the claims of the Plaintiffs and the Class members in full. *See* Adversary Class Action Complaint at Count VII. Plaintiffs also request that the court determine that Shurwest's liability to Plaintiffs and the Class is not dischargeable pursuant to 11 U.S.C. 727A(2)(a). *See* Adversary Class Action Complaint at Count VIII. Relief sought by Plaintiffs includes an Order determining that any claims of Quantum, Debtor-Shurwest and/or Minnesota Life are subordinate to the claims of Plaintiffs and the Class, imposing an equitable lien and constructive trust over funds traceable to Plaintiffs and the class, and a declaratory judgment that none of the defendants are entitled to a discharge of any liability to Plaintiffs and the class.

This Settlement puts the cart before the horse by assuming there has been no fraudulent transfers to Quantum and, therefore that the Settlement does not strip the bankruptcy estate of those assets. However, because the fraudulent transfer litigation is only in the motion to dismiss stage, the impact of those transfers is still uncertain. *Ciofoletti* Creditors currently have no ability to assess the impact of this Settlement on the true value of the bankruptcy estate. Nor for that matter do *Ciofoletti* Creditors or any other creditor have the ability to assess the impact of the FIP scheme Settlement involving AF Trust, since that Settlement involved the transfer of dozens of creditors' claims to the AF Trust, and the price paid for those claims, *presumably* by Quantum, remains confidential. Quantum's involvement in the Settlements is like the tail wagging the dog; Quantum pays to resolve the largest bankruptcy claims while denying that it had no successor or alter-ego liability for the FIP scheme, and that it the funds it uses to pay the claims are not the self-same funds that Shurwest would have

had, had it not declared bankruptcy. It does this in secret, while continuing to deny that all the conduct was due to a rogue employee for who's conduct it has no responsibility.

### D. The Settlement Appears to Be a Collusive Effort Among Minnesota Life, Quantum and Shurwest.

The proposed settlement would extinguish Minnesota Life's motion to remove the debtor in possession, a motion that appears from the evidence on the docket to have substantial merit and would put the estate into the non-conflicted hands of the Trustee for all purposes. An unconflicted Trustee would surely pursue claims against Quantum for taking all Shurwest assets for no consideration in advance of Shurwest's filing for bankruptcy protection and would certainly not let Minnesota Life keep $ 1.8 million it received from Shurwest in the two years before the bankruptcy given Minnesota Life's own participation and liability in the FIP – IUL scheme. The fact that Minnesota Life may hold the biggest single claim against the estate does not mean the Court is bound by, or must defer to, Minnesota Life's support for the settlement. *Davis v. Jackson (In Re Transon. Energy Corp.,* 764 F.2d 1296, 1299 (9th Cir. 1985).

### E. The Settlement Impinges on the Due Process Rights of Putative *Ciofoletti* Class Members Who Have Not Received Notice of the Shurwest Bankruptcy or this Settlement.

The Settlement also impinges on the Due Process rights of absent class members of the putative class alleged by *Ciofoletti* Plaintiffs in their Adversary Class Action Complaint and should not be approved until the individual members of the putative class members have notice of the Shurwest Bankruptcy and the Settlement. Shurwest, the Debtor, has the burden to satisfy due process with notice reasonably calculated, under all circumstances, to apprise parties of the filing and allow an opportunity for objections. *In re B.C. Enterprises, Ltd., United States Bankruptcy Court*, 160 B.R. 827, 830 (D. Ariz. 1993), *citing City of New York [v. New York, New Haven & Hartford R.R. Co*., 344 U.S. 293 (1953); *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 314, (1950). "Merely showing that the creditor ...

was aware of the pendency of the bankruptcy proceeding is not sufficient." *Osborn v. Ricketts (In re Ricketts)*, 80 B.R. 495, 498 (Bankr. 9th Cir.1987) (Jones, J. concurring).

Here, it is unclear whether putative *Ciofoletti* class members were given notice of the Shurwest bankruptcy, and it does not appear from the face of the record that they were. Shortly before Shurwest declared bankruptcy Minnesota Life filed its lawsuit against Shurwest in the District of Minnesota. *Minnesota Life Insurance Company v. Shurwest Holding Company, Inc. et al.,* U.S.D.C., D. Minn., Case No. 0:21-cv-1603-JNE-ECW ("Minnesota Action"). In that lawsuit, Minnesota Life alleged there were at least 222 victims of the FIP-IUL scheme. *See* Minnesota Action Complaint [Dkt. 1] at ¶ 61. Yet, it appears that only FIP-IUL victims who had already filed their own lawsuits, received notice of the Shurwest Bankruptcy. *See* Dkt. 30-1.

All of the FIP-IUL victims whose FIP purchases were through Shurwest are Shurwest creditors, as well as members of the *Ciofoletti* putative class. They are entitled to notice before their claims and/or their rights under the plan of reorganization are impacted, as they may be as a result of this Settlement. Only Shurwest and/or Minnesota Life currently can provide such notice since both have refused to provide the information to *Ciofoletti* Plaintiffs' counsel. Regardless, these creditors are entitled to notice consistent with Due Process.

## CONCLUSION

*Ciofoletti* Creditors respectfully submit that the Court should deny approval of this collusive Settlement or, at minimum should defer any decision pending submission of evidence for the Court, as well as the creditors (including *Ciofoletti* Creditors) to make a reasonable, evidence-based determination of "the paramount interests of the creditors and a proper deference to their reasonable views. . ." *In re A&C Props.*, 784 F.2d 1377, 1380 (9th Cir. 1986).

| | | |
|---|---|---|
| 1 | DATED: August 8, 2022 | ZIMMERMAN REED, LLP |
| 2 | | |
| 3 | | By: /s/ Hart Robinovitch |
| 4 | | Hart Robinovitch<br>Attorney for Plaintiffs and Proposed Class |
| 5 | | SQUITIERI & FEARON, LLP |
| 6 | | |
| 7 | | By: /s/ Lee Squitieri |
| 8 | | Lee Squitieri<br>Attorney for Plaintiffs and Proposed Class |
| 9 | | |

11-13: Notice of Electronic Filing ("NEF") electronically served on the date of filing upon the registered CM/ECF Users herein as evidenced by the NEF.